UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARVEY H. JAY, M.D.,<br><br>　　　　　　Plaintiff/Counterclaim Defendant,<br>v.<br><br>SPECTRUM BRANDS HOLDINGS, INC., SPECTRUM BRANDS, INC., and SHASER, INC.,<br><br>　　　　　　Defendants/Counterclaimants. | CIVIL NO.: 13-CV-8137-LTS |

### HARVEY H. JAY'S DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS

Plaintiff/Counterclaim Defendant, Harvey H. Jay, M.D., ("Dr. Jay"), by and through his undersigned attorneys, respectfully submits this Disclosure of Asserted Claims and Infringement Contentions as required by Local Patent Rule 6 ("LPR6"; including the information specified in Rule 3-1 of the Patent Local Rules of the U.S. District Court for the Northern District of California {"NDCLPR 3-1"}; December 1, 2009; and accompanied by the document disclosure described in Rule 3-2 thereof) as required in item 4 of the Court's Pre-Trial Scheduling Order No. 1.

### Claims Alleged to Be Infringed

1. Pursuant to LPR6, Dr. Jay alleges that the following claims are infringed by Spectrum:

    - Each of claims 1-14 of U.S. Patent number 6,824,542 ("the '542 Patent");

    - Each of claims 1-11, 25-40, and 42 of U.S. Patent number 6,916,316 ("the '316 Patent; note that U.S. Ex Parte Reexamination Certificate 6,916,316 corresponds to the '316 Patent);

1

- Each of claims 1-9, 18-22, and 31 of U.S. Patent number 7,175,617 and claims 35 and 36 of corresponding U.S. Ex Parte Reexamination Certificate 7,175,617 (collectively, "the '617 Patent");

- Each of claims 1 and 3 of U.S. Patent number 7,553,308 ("the '308 Patent); and

- Each of claims 1-11 of U.S. Patent number 8,393,330 ("the '330 Patent).

**Alleged Infringement**

2. Pursuant to LPR 6 and NDCLPR 3-1(c), Dr. Jay alleges that use by Spectrum (including, individually and collectively, each of Spectrum Brands Holdings, Inc., Spectrum Brands, Inc., and Shaser, Inc.), use by others contributorily with Spectrum, or use by others induced by Spectrum, of at least the following Accused Products infringes the Claims Alleged to Be Infringed.

- Remington® i-LIGHT® Pro Intense Pulsed Light Hair Removal System,

- Remington® i-LIGHT® Pro PLUS Intense Pulsed Light Hair Removal System,

- Remington® i-LIGHT® Pro PLUS Quartz Intense Pulsed Light Hair Removal System,

- Remington® i-LIGHT® Pro Intense Pulsed Light Hair Removal System Spa Kit, and

- Remington® i-LIGHT® Pro Premier Intense Pulsed Light Hair Removal System.

2

3. Pursuant to NDCLPR 3-1(a), Dr. Jay alleges that Spectrum infringes each of the Claims Alleged to Be Infringed:

   a. directly, in violation of 35 U.S.C. § 271(a),

   b. by inducing others to perform acts of infringement, in violation of 35 U.S.C. § 271(b), and

   c. contributorily, in violation of 35 U.S.C. § 271(c).

4. Pursuant to NDCLPR 3-1(c), Exhibits A, B, C, D, and E accompany this Disclosure and specify where the limitations of each of the Claims Alleged to Be Infringed are found in use of the Accused Products for the '542 Patent (Exhibit A), the '316 Patent (Exhibit B), the '617 Patent (Exhibit C), the '308 Patent (Exhibit D), and the '330 Patent (Exhibit E).  In each of Exhibits A-E, the claim limitations are compared with the Remington® i-LIGHT® Pro Intense Pulsed Light Hair Removal System, model number IPL6000.

5. Pursuant to NDCLPR 3-1(d), Dr. Jay alleges that each of the Claims Alleged to Be Infringed:

   - has been directly infringed by Spectrum and/or their agents, at least during development, testing, demonstration, and in-house use by Spectrum personnel of each of the Accused Products;

   - has been contributorily infringed by Spectrum, consumer end-users of the Accused Products, and, optionally, one or more intermediary resellers of the Accused Products; in such contributory infringement, Spectrum provides an

    Accused Product for the purpose of enabling its use for reduction of hair on the skin of individual consumer end-users, the consumer end-users use the Accused Product to effect reduction of hair on their skin, and (for products not sold directly to consumer end-users by Spectrum), one or more intermediary resellers purchase and resell Accused Products in a supply chain intended to deliver the Accused Products to individual consumer end-users for purpose of enabling use of the Accused Products for reduction of hair on the skin of individual consumer end-users;

- has been infringed by Spectrum on account of Spectrum's inducement of others to use the Accused Products to reduce hair on the skin of individual consumer end-users or to sell Accused Products to consumer end-users for such use, despite Spectrum's knowledge of each of the Claims Alleged to Be Infringed and despite Spectrum's knowledge that hair reduction methods such as those recited in the Claims Alleged to Be Infringed are commonly patented in the U.S.

6. Pursuant to NDCLPR 3-1(e), Dr. Jay asserts that each limitation of each of the Claims Alleged to Be Infringed literally occurs in the acts and conduct alleged herein to infringe.

7. Pursuant to NDCLPR 3-1(f), Dr. Jay asserts that each of the Claims Alleged to Be Infringed for the '542, '617, '316, and '308 Patents is entitled to the priority date of 8

November 2002 and that each of the Claims Alleged to Be Infringed for the '330 Patent is entitled to the priority date of 26 August 2003.

8. Dr. Jay makes no assertion pursuant to NDCLPR 3-1(g).

9. Pursuant to NDCLPR 3-1(h), Dr. Jay believes that one or more individuals associated with Spectrum had knowledge of at least the '316 and '617 Patents, requested reexamination of at least the '316 and '617 Patents, and/or proceeded to make, use, offer to sell, sell, and import into the U.S. the Accused Products, to contributorily do so with others, and/or to induce others to perform these acts, despite knowledge that use of the Accused Products for reducing hair on the skin of a human infringes one or more of the Claims Alleged to Be Infringed.  Dr. Jay also believes that one or more individuals associated with Spectrum had access to information provided by Dr. Jay about his then-pending patent applications during meetings in about 2003-2004.  Dr. Jay also believes that one or more of the patents in suit and patents and patent applications related to them have been cited by individuals associated with Spectrum in at least U.S. patent applications prosecuted by Spectrum.  Dr. Jay also believes that one or more individuals associated with Spectrum has been aware of the patents in suit since at least 2013 on account of an agent of Dr. Jay contacting Spectrum about those patents.  Dr. Jay also believes that it is customary in the industry for useful equipment and techniques for hair removal to be patented, and that Spectrum has at all relevant times been aware of this custom.

**Corresponding Documents**

10. Pursuant to NDCLPR 3-2(a), Dr. Jay possesses documents within the scope of this Rule. Such documents are presently being scanned for production and will be produced as soon as practically possible (and not later than 30 days after service of this Disclosure).

11. Pursuant to NDCLPR 3-2(b), Dr. Jay possesses documents within the scope of this Rule. Such documents are presently being scanned for production and will be produced as soon as practically possible (and not later than 30 days after service of this Disclosure).

12. Pursuant to NDCLPR 3-2(c), although a copy of the file history for each of the '542, '617, '316, '308, and '330 Patents has previously been provided by Dr. Jay to counsel for Spectrum, an additional copy of each accompanies this Disclosure. Copies of the reexamination file wrappers for each of the '617 and '316 Patents accompany this Disclosure. Copies of file wrappers for related U.S. patent application 11/071,697 (to which the '308 Patent claims priority) and U.S. patent applications 10/647,948 and 13/066,788 (to each of which the '330 Patent claims priority), and U.S. patent applications 11/201,580, 10/773,621, and 13/762,745 (related U.S. patent applications) also accompany this Disclosure.

13. Pursuant to NDCLPR 3-2(d), documents included with the file wrappers for each of the '542, '617, '316, '308, and '330 Patents indicate that the corresponding patent

application was filed in the name of and owned by Dr. Jay, and no further documents evidencing ownership of the rights in these patents is believed to be necessary or to exist.

14. Pursuant to NDCLPR 3-2(e), Dr. Jay makes no assertion pursuant to NDCLPR 3-1(g) and there are consequently no corresponding documents.

Respectfully submitted,

Dated: April 28, 2014
      New York, NY

DILWORTH PAXSON LLP

By: /s/ James J. Rodgers

James J. Rodgers, *Pro Hac Vice*
1500 Market Street, Suite 3500E
Philadelphia, PA 19102-2101
(215) 575-7000 (telephone)
(215) 575-7200 (facsimile)
jrodgers@dilworthlaw.com

*Attorneys for Plaintiff/Counterclaim-Defendant Harvey H. Jay, M.D.*

## CERTIFICATE OF SERVICE

      I hereby certify that on April 28, 2014, I electronically filed the foregoing Disclosure of Asserted Claims and Infringement Contentions, and exhibits A-E thereto, through the Court's Electronic Case Filing ("ECF") System.  Notice of each filing is being served upon all counsel of record automatically through the ECF System.

                                                                               /s/John C. Kessler
                                                                                 John C. Kessler