# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARVEY H. JAY, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) C.A. No. 1:13-cv-8137-LTS-DCF <br> ) |
| SPECTRUM BRANDS HOLDINGS, INC., <br> SPECTRUM BRANDS, INC., and SHASER, <br> INC., | ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

### SPECTRUM'S POST-HEARING SUPPLEMENTAL SUBMISSION CONCERNING DISPUTED CLAIM TERMS 10, 24, 26, 29, AND 30

WILMER CUTLER PICKERING HALE AND DORR LLP

Wayne L. Stoner
60 State Street
Boston, MA 02109
Phone: (617) 526-6863
Fax: (617) 526-5000
Wayne.Stoner@wilmerhale.com

Corinne E. Atton
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Phone: (212) 295-6368
Fax: (212) 230-8888
Corinne.Atton@wilmerhale.com

**TABLE OF CONTENTS**

**Page**

I.  DISPUTED CLAIM TERMS 10, 24, AND 30 SHOULD BE
    CONSTRUED TO EXCLUDE DAMAGE TO <u>HAIR FOLLICLES</u>...................................1

II. DCT 26 AND 29 SHOULD BE CONSTRUED SUCH THAT
    "RETARDING," "SLOWING" OR "DELAYING" HAIR GROWTH OR
    APPEARANCE DOES NOT STOP HAIR GROWTH BUT PERMITS
    THE HAIR TO CONTINUE TO <u>GROW</u>............................................................................3

I. **DISPUTED CLAIM TERMS 10, 24, AND 30 SHOULD BE CONSTRUED TO EXCLUDE DAMAGE TO HAIR FOLLICLES**

Disputed claim terms ("DCT") 10, 24, and 30 recite that light treatment accomplishes some form of hair removal, retardation or destruction. There is no dispute that the "hair" being removed, retarded, or destroyed is the hair fibers. However, at the hearing, Jay's[1] counsel asserted that these limitations could still be met if there was damage to the hair follicles as "collateral damage." *See* Markman Hearing Tr., at 24, 54-57. The intrinsic evidence belies Jay's contention.

The intrinsic evidence unmistakably disavows damage to hair follicles in the claimed method.

The '542 Patent family[2] specification originally allowed the possibility that there could be "partial destruction of follicles" in the claimed method:

> Thus, in contrast to prior methods, which are aimed at completely destroying the hair follicles, the present method contemplates only a partial destruction of the follicles or, alternately, a destruction of the hair inside the follicles. In either case, the hair will grow and again appear ….

'542 Patent, at 2:32-36 (Atton Decl.[3] Ex. 14) (DE 44-15).

This claim, however, ran Jay into the territory claimed by prior art, and Jay was forced to disclaim this possibility in order to save his patents from invalidation.

In the reexamination of the continuation-in-part '617 Patent, the "collateral damage" construction that Jay now seeks was initially rejected in light of a "Manstein" prior art reference.

---

[1] Plaintiff Harvey H. Jay is referred to herein as Jay.

[2] Jay has asserted five patents in this litigation: U.S. Patent Nos. 6,824,542 ("'542 Patent"), 6,916,316 ("'316 Patent"), 7,175,617 ("'617 Patent"), 7,553,308 ("'308 Patent"), and 8,393,330 ("'330 Patent"). The '542 Patent family comprises the '542, '316, '617, and '308 Patents. *See* Defendants' Second Corrected Claim Construction Brief, Addendum B (DE 49).

[3] References to Atton Decl. herein are references to the Corrected Declaration of Corinne E. Atton in Support of Defendants' Responsive Claim Construction Brief (DE 46).

1

At that time, Jay claimed that "[t]he cited Manstein paper teaches temporary hair removal by means of a *partial destruction of hair follicles*, particularly the bulb." '617 Patent Reexam File History, Proposed Amendment and Request for Reconsideration dated Oct. 14, 2009, at 11, 22 (emphasis added) (Atton Decl. Ex. 27 (DE 44-31)).

To overcome the prior art rejection, Jay specifically contrasted his method, claiming that the asserted patents have a "completely different target and method" (*id.*, at 14) and did not damage the follicles at all:

- "The patentee, in contrast, contemplates a method where the hair shaft is targeted for ablation or severing (cutting) and <u>the follicle is undamaged</u>. *Id.*, at 11 (emphasis added);

- "The patent of the present reexamination concerns the temporary removal of hair. The challenge to the patent (the invention of which targets and <u>injures the hair shaft alone</u>) …." *Id.* at 5 (emphasis added);

- "… completely different target and method …." *Id.* at 14;

- "The patentee, in contrast, contemplates a method where the hair shaft is targeted and <u>the follicle is left alone</u>." *Id.* at 22 (emphasis added).

Jay made equally categorical statements in the continuation-in-part '316 Patent prosecution:

- "The parameters of the light used by Anderson and Almeida are selected to target and destroy the follicles. Applicant's parameters <u>are selected to leave the follicle intact and to destroy the hair fibers</u>." '316 Patent File History, Interview Memorandum, dated Jan. 10, 2005, at 1 (emphasis added) (Atton Decl. Ex. 31 (DE 44-38)).

In reexamination of the '316 Patent, Jay made consistent disclaimers of "collateral damage" in relation to his claimed method:

- "The cited Manstein white paper teaches temporary hair removal by means of a *partial destruction of hair follicles*, particularly the bulb. The patentee, *in contrast*, contemplates a method where the endogenous chromophores in the hair shaft are targeted, and hair growth retardation is caused by absorption by the endogenous chromophore in the hair." '316 Patent Reexam File History, Request

2

for Reconsideration dated Oct. 16, 2009, at 4 (emphasis added) (Atton Decl. Ex. 32 (DE 44-39)).

Until this lawsuit, Jay has never sought to remove or amend this unambiguous differentiation between his claimed method and prior art teaching damage or partial damage to the hair follicle.  Indeed, Jay has disavowed his counsel's own remarks that removing hair without damaging the follicles was "physically impossible to do." Tr., at 56:22-23.  In prosecuting the '330 Patent, Jay confirmed that "hair removal may be accomplished in numerous ways …. Also, the manner or form may vary, e.g., permanent or temporary, <u>with or without some damage to the follicle</u>, etc." '330 Patent File History, Interview Summary and Amendment dated Oct. 25, 2012, at 11 (Atton Decl. Ex. 37 (DE 44-44); *see Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.").

To honor Jay's prosecution of the asserted patents, DCTs 10, 24, and 30 should be strictly construed to exclude the possibility of damage (in whole or in part) to the hair follicle or any part of the hair structure other than the hair fiber.  To do otherwise would constitute a rewriting of the intrinsic evidence and would bring into relief the invalidity of the asserted patents in light of the prior art.

## II. DCT 26 AND 29 SHOULD BE CONSTRUED SUCH THAT "RETARDING," "SLOWING" OR "DELAYING" HAIR GROWTH OR APPEARANCE DOES NOT STOP HAIR GROWTH BUT PERMITS THE HAIR TO CONTINUE TO GROW

DCTs 26 and 29 refer to "retarding," "slowing," "delaying," or "diminishing the rate of" the growth or appearance of hair.  The parties appear to agree that "delay" is unambiguously "delay" and that "retarding" or "slowing" hair growth means to diminish the rate of growth of hair, *i.e.*, the hair grows more slowly.  Jay now claims, however that "retarding" or "slowing" the rate of hair growth includes slowing that rate to <u>zero</u> (<u>stopping</u> hair growth), and that a "delay" in

3

hair appearance includes a delay <u>forever</u> (the hair <u>never</u> reappears). Jay's patent specifications and the prosecution history demonstrate that Jay's position is unsupportable. The only reasonable way to construe these terms is to include in the construction, the regrowth of hair after cessation of treatment.

First, Jay made clear in the patent specifications that diminishing the rate of growth of hair does not mean stopping that growth. The patent specifications say that after treatment, "[i]n either case the hair *will grow* and *again appear* on the treated surface …. However, the rate at which hair grows will be reduced …." '617 Patent, at 2:51-54 (emphasis added) (Atton Decl. Ex. 15 (DE 44-16); '316 Patent, at 3:1-4 (emphasis added) (Atton Decl. Ex. 16 (DE 44-17)). "If the individual wishes to grow hair at any location, this is possible by merely refraining from light application." '617 Patent, at 6:6-8 (Atton Decl. Ex. 15 (DE 44-16); '316 Patent, at 6:49-51 (Atton Decl. Ex. 16 (DE 44-17)). Thus, Jay's method, as identified in the patent specifications, envisions the regrowth of hair after cessation of treatment.

Second, to avoid the effect of prior art on his proposed method during prosecution, Jay repeatedly ratified that his method—as opposed to those present in prior art—"slowed" or "retarded" hair growth while allowing regrowth when treatment ceased:

- "Claim 41 contemplates the slowing of hair growth by repeated applications of light energy. Neither Almeida nor Anderson evinces any interest in slowing hair growth. … Slowing hair growth <u>while permitting the hair to continue to grow</u> is contrary to their main goal. … [T]here is no suggestion [in Almeida or Anderson] of retarding the growth of hair along the skin surface, <u>while permitting the hair to continue growing</u>." '617 Patent File History, Amendment dated Dec. 6, 2004, at 28 (emphasis added) (Atton Decl. Ex. 24 (DE-27));

- "As set forth in amended claim 41 … one retards the growth of hair along the skin surface, <u>while permitting the hair to continue growing</u>. Almeida does not suggest retarding the growth of hair along the skin surface, <u>while permitting the hair to continue growing</u> …" '617 Patent File History, Amendment dated July 21 2005, at 20 (emphasis added) (Atton Decl. Ex. 26 (DE 44-30));

4

- "As discussed with the Examiner … the objective of Almeida is the permanent <u>cessation</u> of hair growth … Almeida does not teach or suggest temporarily <u>retarding</u> hair growth …." *Id.* at 18 (emphasis added);

- "The references of record say nothing about applying light to <u>slow</u> hair growth. Instead the method of Almeida results in a <u>cessation</u> of hair growth.  Thus, Almeida <u>stops</u> hair growth in contrast to the present invention as set forth in amended claim 29 that contemplates hair growth <u>retardation but not cessation</u>." '316 Patent File History Election and Amendment dated Sept. 24, 2004, at 18 (emphasis added) (Atton Decl. Ex. 29 (DE 44-36)).

Jay's present assertions (*see e.g.*, Tr., at 67) that "at some point each hair is going to stop growing" are directly contrary to his prior representations to the PTO.

In the context of the asserted patents, "retarding," "slowing," "delaying," or "diminishing the rate of" hair growth does not mean stopping hair growth altogether or causing hair to never return.  DCTs 26 and 29 should be construed to require a method "permitting the hair to continue to grow"—Jay's own exact words to the PTO.

Dated:  November 5, 2014

          Respectfully submitted,

          By: /s/          *Wayne L. Stoner*
          Wayne L. Stoner
          WILMER CUTLER PICKERING HALE AND DORR LLP
          60 State Street
          Boston, MA 02109
          Phone:  (617) 526-6863
          Fax:  (617) 526-5000
          Wayne.Stoner@wilmerhale.com

        Corinne E. Atton
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Phone:  (212) 295-6368
Fax:  (212) 230-8888
Corinne.Atton@wilmerhale.com

*Attorneys for Defendants Spectrum Brands Holdings, Inc., Spectrum Brands, Inc., and Shaser, Inc.*