UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

HARVEY H. JAY,

          Plaintiff,

    -v-                               No.  13CV8137-LTS-DCF

SPECTRUM BRANDS HOLDINGS, INC. et al.,

          Defendants.

--------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

In this patent infringement case, Plaintiff Harvey H. Jay, M.D., ("Plaintiff" or "Jay"), alleges that defendants Spectrum Brands Holdings, Inc., Spectrum Brands, Inc., and Shaser, Inc. ("Defendants" or "Spectrum"), employed hair removal techniques that infringe upon five U.S. Patents: numbers 6,824,542 (the "'542 Patent"), 6,916,316 (the "'316 Patent"), 7,175,617 (the "'617 Patent"), 7,553,308 (the "'308 Patent"), and 8,393,330 (the "'330 Patent" and together, the "Jay Patents").

On October 22, 2014, the Court held a Markman hearing regarding the construction of thirty terms used in the claims of the Jay Patents.  Each of the disputed terms appears in one or more of the claims in one or more of the Jay Patents.  (See Docket Entry ("DE") Nos. 39, 61.)  The Court has considered thoroughly all of the parties' written submissions and their argumentation at the hearing concerning the disputed claim construction issues.  For the reasons set forth below, and those stated on the record of the hearing, the Court resolves the claim term disputes as set forth below.

<u>BACKGROUND</u>

The Jay Patents are directed to techniques of temporary hair removal primarily utilizing light directed at the hair.

After reviewing the parties' pre-hearing submissions concerning the disputed claim terms (the "DCTs"), the Court issued an order setting forth proposed constructions of certain of the DCTs.  (DE No. 54.)  At the hearing, the parties agreed that certain of the DCTs are to be construed in accordance with the Court's proposed construction, another agreed construction, or their ordinary meaning (<u>i.e.</u>, no construction), as follows:

| DCT No. | Text | Location(s) in Asserted Patent Claims | Construction, if Any |
|---|---|---|---|
| 2 | "Predetermined" | '542 Patent – claim 1; '617 Patent – claims 1, 35 and 36; '316 Patent – claims 1, 9, 25, 29 and 39; '308 Patent – claim 1; '330 Patent – claims 1, 2, 3, 5 and 7. | "selected prior to the relevant action" (Tr. 35-36; DE No. 54.) |
| 3 | "Total Energy" | '542 Patent – claims 1, 5 and 6; '617 Patent – claims 1, 3, 8, 35 and 36; '316 Patent – claims 1, 3, 8, 9, 25, 27, 29, 32 and 39; '308 Patent – claim 1; '330 Patent – claims 1, 3, 5 and 7. | "total amount of energy transmitted" (Tr. 36; DE No. 54.) |
| 5 | "Protruding Hair (Fibers)" | '330 Patent – claims 1, 3, 4, 5, 6 and 7. | "hair (fibers) which extend from a hair follicle above the exterior surface of the skin" (Tr. 40-41; DE No. 49, at 53 of 63.) |

| DCT No. | Text | Location(s) in Asserted Patent Claims | Construction, if Any |
|---|---|---|---|
| 6 | "Growth of Hair" or "Hair Growth" ("through" or "along" or "at" a "a skin surface") | '542 Patent – claim 1; '617 Patent – claims 1, 35 and 36; '316 Patent – claims 1, 9, 29 and 39; '308 Patent – claim 1; '330 Patent – claims 1, 3 and 5. | "growth of hair [through or along or at] a [the] skin surface" (Tr. 41; DE No. 49, at 53 of 63.) |
| 12 | ("Direct Light Pulses Toward" or "Apply Light Pulses To" or "Irradiate") "a Skin Surface" | '542 Patent – claim 1; '617 Patent – claims 1, 35 and 36; '316 Patent – claims 1, 25, 29, 30 and 39; '308 Patent – claim 1; '330 Patent – claims 1, 2, 3 and 5. | Ordinary meaning  (Tr. 60-61.) |
| 13 | "Hair Removal Treatment" | '330 Patent – claims 7 and 8 | Ordinary meaning  (Tr. 61.) |
| 20 | "Generating a Predetermined Number of Pulses of Light" | '542 Patent – claim 1; '617 Patent – claims 1, 35 and 36; '316 Patent – claim 1; '308 Patent – claim 1; '330 Patent – claim 1. | "Generating a pre-selected number of pulses of light" (Tr. 62-63; DE No. 54.) |
| 21 | "Said Pulses Having . . . a Total Energy all Predetermined" | '542 Patent – claim 1; '617 Patent – claims 1, 35 and 36; '316 Patent – claims 1, 9, 25, 29 and 39; '308 Patent – claim 1; '330 Patent – claims 1, 3, 5 and 7. | "The total amount of energy transmitted through the pulses having been determined in advance" (Tr. 63; DE No. 54.) |
| 22 | "Directing said Pulses of Light Towards a Skin Surface" | '542 Patent – claim 1; '617 Patent – claims 1 and 36; '316 Patent – claims 1 and 39. | Ordinary meaning (Tr. 63.) |

| DCT No. | Text | Location(s) in Asserted Patent Claims | Construction, if Any |
|---|---|---|---|
| 23 | "Applying said Pulses of Light to a Skin Surface" | '617 Patent – claim 35; '316 Patent – claims 25 and 29; '308 Patent – claim 1. | Ordinary meaning (Tr. 63.) |

The parties agreed that DCT 19 does not appear in any of the asserted claims and therefore need not be construed. (Tr. 62.) The parties further agreed that DCT 28 will be construed as follows[1]:

| DCT No. | Text | Location(s) in Asserted Patent Claims | Construction, if Any |
|---|---|---|---|
| 28 | "By Virtue of … Absorption of Light … by Hair Fibers Below a Skin Surfce" ("at Least Temporarily Retarding Hair Growth" or "Severing or Damaging the Hair Fibers") | '617 Patent – claims 35 and 36. | "Retention of light resulting, at one or more portions of hair fibers situated beneath the exterior of a skin surface, in ('impairment for a limited period of time of the rate of hair growth' or 'severance or damage of the hair fibers')" (Tr.73-74; DE No. 54.) |

The parties' remaining claim construction disputes focus principally upon whether there is any difference in the meaning of the terms "projecting hair" and "protruding hair" as used in the asserted claim terms (the "Projecting/Protruding Dispute"), whether certain claim terms should be defined by reference to the ultimate intention of the user of the claimed methods or merely the effect of the methods (the "Intentionality Dispute"), whether Plaintiff has

---

[1] The Court's proposed construction order, and the hearing transcript, reflect misplacement of the opening parenthetical in the construction. The version presented in the table appears to the Court to be more sensible grammatically.

limited his claims to methods in which light affects only hair fibers and not any surrounding

anatomical elements such as hair follicles (the "Collateral Damage Dispute"), whether Plaintiff's

claims should be construed to exclude any method in which the growth of any given shaft of hair

is stopped, rather than merely slowed (the "Non-Stop Dispute"), and characterization of the

operation of the Plaintiff's methods in connection with the construction of other claim terms (the

"Treatment Definition Dispute").

<u>DISCUSSION</u>

Claim construction is a matter of law to be determined by the court.  <u>Markman v.

Westview Instruments, Inc.</u>, 517 U.S. 370, 372 (1996).  In interpreting the meaning of claim

terms, "words of a claim are generally given their ordinary and customary meaning" as

understood by "a person of ordinary skill in the art at the time of invention, <u>i.e.</u>, as of the

effective filing date of the patent application."  <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1312-13

(Fed. Cir. 2005) (en banc) (citations and internal quotation marks omitted).  The court construes

a claim term "not only in the context of the particular claim in which the disputed term appears,

but in the context of the entire patent, including the specification."  <u>Id.</u> at 1313.

There are two exceptions to this general rule: "1) when a patentee sets out a

definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a

claim term either in the specification or during prosecution."  <u>Thorner v. Sony Computer

Entertainment America LLC</u>, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

When construing claim terms, courts must first look to the intrinsic evidence, <u>i.e.</u>,

the words of the claim themselves, the written description in the patent's specification, and the

history of the patent prosecution before the U.S. Patent and Trademark Office (the "PTO").

<u>Phillips</u>, 415 F.3d at 1314-17.  The specification "acts as a dictionary when it expressly defines

terms used in the claims or when it defines terms by implication . . . . [I]t is the single best guide

to the meaning of a disputed term."   <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582

(Fed. Cir. 1996).   The specification's written description of the invention or method is relevant

to construction of claims, because it is a "statutory requirement that the specification describe

the claimed invention in 'full, clear, concise, and exact terms.'"   <u>Phillips</u>, 415 F.3d at 1316

(quoting 35 U.S.C. § 112).   Therefore, claim terms must be interpreted in a manner consistent

with the specification of which they are a part.   <u>Phillips</u>, 415 F.3d at 1316 (citation omitted).

        The court may also use the prosecution history of a patent as an aid to the

construction of claim terms.   The prosecution history "can often inform the meaning of the claim

language by demonstrating how the inventor understood the invention and whether the inventor

limited the invention in the course of prosecution, making the claim scope narrower than it

would otherwise be."   <u>Phillips</u>, 415 F.3d at 1317 (citations omitted).   However, "because the

prosecution history represents an ongoing negotiation between the PTO and the applicant, rather

than the final product of that negotiation, it often lacks the clarity of the specification and thus is

less useful for claim construction purposes."   <u>Id.</u>

        A court may stray from the plain meaning of a claim term only where the

"patentee demonstrated an intent to deviate from the ordinary and accustomed meaning of a

claim term . . . by characterizing the invention in the intrinsic record using words or expressions

of manifest exclusion or restriction, representing a clear disavowal of claim scope."   <u>SanDisk</u>

<u>Corp. v. Memorex Prods., Inc.</u>, 415 F.3d 1278, 1286 (Fed. Cir. 2005); <u>Voda v. Cordis Corp.</u>, 536

F.3d 1311, 1321 (Fed. Cir. 2008) ("[I]n order to disavow claim scope during prosecution 'a

patent applicant must clearly and unambiguously express surrender of subject matter.'").

"Accordingly, 'where the patentee has unequivocally disavowed a certain meaning to obtain his

patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the

claim congruent with the scope of the surrender.'"  Chimie v. PPG Indus. Inc., 402 F.3d 1371,

1384 (Fed. Cir. 2005) (quoting Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1324 (Fed.

Cir. 2003)).

   Finally, courts may resort to "extrinsic" evidence such as dictionaries, treatises,

and expert testimony, which may serve as a source of "accepted meanings of terms used in

various fields of science and technology" or provide "background on the technology at issue."

Phillips, 415 F.3d at 1317-18.  However, such extrinsic evidence is "less significant than the

intrinsic record in determining the legally operative meaning of claim language," and must be

considered in the context of the intrinsic evidence.  Id. at 1317-19 (citations and quotation marks

omitted).  Accordingly, where analysis of the intrinsic evidence alone resolves the ambiguity in a

disputed claim term, it is improper to rely on extrinsic evidence to construe the meaning of the

term.  Vitronics, 90 F.3d at 1583.

The Projecting/Protruding Dispute - DCTs 4, 9, and 27

   At the hearing, Jay asserted that "protruding hairs are a subset of the universe of

projecting hairs," in which protruding hairs breach the skin's surface, whereas projecting hairs

include both protruding and non-protruding hairs, that is hairs below the surface of the skin.  (Tr.

40:16-24.)

   Jay undertook to inform the Court with respect to any usage of the term

"projecting" in connection with sub-cutaneous hairs in the patent history.  (See Tr., at 41:3.)  Jay

has submitted no notice of any such usage, and the Court has found none in the relevant patent

history.

   The relevant DCTs are accordingly construed as follows:

| DCT No. | Text | Location(s) in Asserted Patent Claims | Construction, if Any |
|---|---|---|---|
| 4 | "Projecting Hair (Fibers)" | '542 Patent – claim 1; '316 Patent – claims 1, 39 and 42. | "Protruding Hair (Fibers), and vice-versa" |
| 9 | "Removal of ("Projecting Hair" or "Projecting Hair Fibers" or "Protruding Hair Fibers") "From a Skin Surface" | '542 Patent – claim 1; '316 Patent – claims 1, 25, 39 and 42; '330 Patent – claim 1. | "Elimination from a skin surface of hair fibers which extend above the exterior surface of the skin" (Tr 53, 72-73; DE No. 40, at 21 of 40.) |
| 27 | "By Virtue of" ("Directing . . . Light" or "Absorption of Light") . . . Effectuating Removal of Projecting Hair Fibers from a Skin Surface" | '542 Patent – claim 1; '316 Patent – claim 1. | "(Application of light or retention of light) resulting in elimination from a skin surface of hair fibers which extend above the exterior surface of the skin" (Tr. 72-74.) |

The Intentionality Dispute - DCTs 1, 11, 14, 15, 16, and 17

       The parties dispute the proper construction of the term "temporarily" as it is used in several of Jay's claims.  Spectrum seeks a construction of the term "temporarily" that would define the term by reference to the "goal" of the treatment.  By this means, Spectrum seeks to preclude Jay from asserting that treatments intended to achieve permanent hair removal, but fail, infringe the Jay Patents.  Jay stipulated on the record of the hearing that "[he is] not going to assert that a failed attempt at permanent hair removal is covered" by any of the claims at issue in this case.  (Tr. at 33:12-13.)  Prior to the hearing, the Court had proposed to construe this term to mean "lasting for a limited period of time."  (DE No. 54.)  As the Court explained at the hearing:

       [T]here certainly seems to be an intention inherent in the plaintiff's invention, in

these patents, to determine[sic²] and then practice periodic reapplication in a preemptive mode in order to keep hair away.  And that seems to me to make it superfluous and unnecessary to try to pack into the word 'temporarily' an intentionality concept.

'Temporarily' means for a limited period of time. And then the significance of that in the context of the plaintiff's invention appears to me to come out in the other explicit text of the patents and specifications here which speak in terms of the determination of a retreat[ment] cycle and the application of the retreatment cycle in a way that prevents regrowth of hair.

So it seems to me both unnecessary and superfluous to try to define the individual term 'temporarily' to embrace what's inherent in the other parts of the patent. And so that's why I went to an objective definition of 'temporarily' in my proposed construction.

(Tr. at 28:6-22.)

The Court, having considered further the parties' arguments, concludes that an objective approach to construction of these DCTs is appropriate.  In light of this determination and of the Court's determination of other issues discussed on the record of the <u>Markman</u> hearing, the following DCTs are construed as set forth in the chart below:

| DCT No. | Text | Location(s) in Asserted Patent Claims | Construction, if Any |
|---|---|---|---|
| 1 | "Temporarily" | '542 Patent – claim 1; '617 Patent – claims 1 and 35; '316 Patent – claims 1, 9, 25, 29 and 39; '308 Patent – claim 1; '330 Patent – claims 1, 2, 3 and 5. | "lasting for a limited period of time" (DE No. 54.) |
| 11 | "Maintain a Skin Surface Temporarily Free of Projecting Hair Fibers" | '316 Patent – claims 1 and 39. | "Maintain, for a limited period of time, a skin surface free of projecting hair fibers" (Tr. 58; DE No. 54.) |

---

² So in transcript.  The Court likely referred here to the initial administration of treatment.

| DCT No. | Text | Location(s) in Asserted Patent Claims | Construction, if Any |
|---|---|---|---|
| 14 | "Temporarily Preventing Hair Reappearance" | '542 Patent – claim 1; '316 Patent – claims 25 and 39; '308 Patent – claim 1; '330 Patent – claims 1 and 2. | The construction of DCT 14 is also affected by the resolution of the Treatment Definition Dispute.  DCT 14 is, accordingly, construed below. |
| 15 | "Using Said Device to Temporarily Remove Hair from said Skin Surface" | '316 Patent – claim 25. | "Using the referenced device to remove hair from the skin surface for a limited period of time" (Tr. 61-62; DE No. 54.) |
| 16 | "To Temporarily Prevent a Growth of Hair Through said Skin Surface" | '542 Patent – claim 1; '316 Patent – claims 9 and 39; '308 Patent – claim 1; '330 Patent – claims 1 and 3. | "To prevent hair growth through the skin surface for a limited period of time" (Tr. 61-62; DE No. 54.) |
| 17 | "For the Temporary Removal of Hair" | '316 Patent – claim 25; '330 Patent – claim 7. | "For hair removal for a limited period of time" (Tr. 61-62; DE No. 54.) |

<u>Collateral Damage Dispute - DCTs 10, 24, and 30</u>

Spectrum seeks a construction of claim terms referring to hair removal or growth retardation through the absorption of light that would limit their scope to light absorption affecting the hair or hair fibers only, and exclude any application of light that inflicts damage, whether intended or collateral, on the hair follicle.  The plain language of the relevant DCTs includes no such limitation.  Spectrum asserts that, in the course of prosecuting the patents, Jay explicitly disclaimed methods affecting the hair follicle in communications with the patent examiner.

"[T]he prosecution history may demonstrate that the patentee intended to deviate from a term's ordinary and accustomed meaning . . . if it shows the applicant characterized the invention using words or expressions of manifest exclusion or restriction during the

administrative proceedings before the Patent and Trademark Office."  Teleflex, Inc. v. Ficosa N.
America Corp., 299 F.3d 1313, 1326 (Fed. Cir. 2002).  Thus, "[w]hen the patentee makes clear
and unmistakable prosecution arguments limiting the meaning of a claim term in order to
overcome a rejection, the courts limit the relevant claim term to exclude the disclaimed matter."
Sandisk Corp. v. Memorex Products, Inc., 415 F.3d 1278, 1286 (Fed. Cir. 2005).  "An
ambiguous disclaimer, however, does not advance the patent's notice function or justify public
reliance, and the court will not use it to limit a claim term's ordinary meaning. . . . There is no
'clear and unmistakeable' disclaimer if a prosecution argument is subject to more than one
reasonable interpretation, one of which is consistent with a proffered meaning of the disputed
term."  Id. at 1287.

   DCTs 10, 24 and 30 refer to the effects (i.e., hair removal, severance of hair fibers
below skin or growth retardation) of the absorption of light applied in Jay's methods.  In the
"Summary of the Invention" portion of the '542 Patent, as issued in 2004, Jay stated that "in
contrast to prior methods, which are aimed at completely destroying the hair follicle, the present
method contemplates only a partial destruction of the follicles or, alternatively, a destruction of
the hair inside the follicles."  ('542 Patent col 2:32-36, Atton Decl. Ex. 14.)  The "Summary of
the Invention" portion of the '617 Patent, as issued in 2007, contains the same phrase.  ('617
Patent col. 2:46-51, Atton Decl. Ex. 16.)

   Spectrum seeks to construe the references in the asserted claims of these and the
related patents to exclude any possibility of damage to hair follicles, arguing that, in submissions
in connection with later reexamination proceedings and other elements of the prosecution history
of the Jay Patents, Plaintiff disclaimed any method that would injure hair follicles in any way.
Although two claims of the '617 Patent, which were proposed in 2009 and determined in 2010 to

be patentable in connection with a reexamination proceeding and are not asserted here, specifically call for action upon hair fibers "without partially or completely destroying follicles associated with such hair fibers," Plaintiff has made no such disclaimer as to the remainder of the asserted claims.  (See Atton Decl. Ex. 15, US Patent No. 7,175,617 C1, claims 33 and 34.)

As explained above, "clear and unmistakable prosecution arguments limiting the meaning of a claim term in order to overcome a rejection" will be held to limit the relevant claim term to exclude the disclaimed matter.  Sandisk, 415 F.3d at 1286.  An ambiguous disclaimer, however, does not overcome the ordinary meaning of a term.  "There is no 'clear and unmistakable' disclaimer if a prosecution argument is subject to more than one reasonable interpretation, one of which is consistent with a proffered meaning of the disputed term."  Id. at 1287.

Spectrum cites statements in a January 2005 memorandum identifying topics that Jay intended to discuss with the patent examiner in connection with the application for the '316 Patent, in which Jay was apparently responding to a position that a claim was anticipated by two prior art references that used light to remove hair.  Jay stated: "The parameters of the light used by [the two prior art references] are selected to target and destroy the follicle.  Applicant's parameters are selected to leave the follicle intact and to destroy the hair fibers."  (Atton Decl. Ex 31.)  Other passages of the Jay Patents and their prosecution history make it clear that the "parameters" referred to include wavelengths, pulse widths and energy densities, and that different parameters and combinations of parameters affect different anatomical elements (i.e., hair fibers, follicles, blood vessels) differently.  (See, e.g., Atton Decl. Ex. 32 at 5-6.)  This prosecution history passage thus clearly asserts that Jay's methods involve the selection of parameters that are designed to destroy the hair fibers rather than the follicles.  It does not,

however, represent or guarantee that there will be no incidental or collateral effects on the hair

follicles, much less clearly and unmistakably disclaim any follicular damage resulting from such

effects.  The prosecution history is insufficient to support the restrictive construction proposed

by Spectrum.

               Spectrum's reliance on statements in connection with a later reexamination of the

'316 Patent is no more efficacious.  In its August 2008 Request for Reconsideration of the

rejection of certain claims of the '316 Patent, Jay sought to distinguish the invention over a

"white paper" by one Manstein that was proffered as prior art.  With respect to claim 29, which

is asserted in this proceeding, Jay represented that he "contemplates a method where the

endogenous chromophores in the hair shaft are targeted, and hair growth retardation is caused by

absorption by the endogenous chromophore in the hair."  (Atton Decl. Ex. 32 at 4.)  He contrasts

this operation with that of "[t]he Manstein white paper, . . . [which] teaches parameters or

settings that target the bulb (matrix) of the follicles and leave the hair shafts undamaged.  The

absorption that causes hair growth retardation according to the teachings of the Manstein white

paper is not by chromophores in the hair, but in the follicles, particularly, the bulb (matrix)."

(Id.)  Jay's description of Manstein's method goes on to describe it as one that a person of

ordinary skill in the art would understand as using parameters "causing a partial destruction of

the hair follicle and <u>preferably</u> having *no effect on the hair shaft."*  (Id. at 4-5 (underscoring

added, italics original).)  Again speaking of Manstein, Jay states that, under the method disclosed

by the white paper, "the matrix will absorb more light than the hair shafts and hence is a more

sensitive target for light treatment."  (Id. at 7.)  In distinguishing his invention from the Manstein

reference, Jay did not present the Manstein reference as one that only damaged follicles.  Neither

did he present his own invention as one that only damaged hair fibers and brooked no possibility

of damage to follicles.  Rather, he distinguished the methods on the basis of the structures targeted through the selection of parameters, and the discussion does not explicitly exclude any possibility of damage to follicles with the use of Jay's method.  Reading it as a disclaimer of such damage by Jay is, therefore, unwarranted.

The final group of statements upon which Spectrum relies for its disclaimer argument appears in Jay's October 2008 Proposed Amendment and Request for Reconsideration, relating to the '617 Patent.  In the course of distinguishing his method from the Manstein reference (the "primary objective" of which, according to Jay, "is to target the hair matrix (bulb) for temporary injury to produce temporary hair growth reduction or delay"), Jay refers to his own "patent (the invention of which targets and injures the hair shaft alone)."  (Atton Decl. Ex. 27 at 5.)  Another passage cited by Spectrum again distinguishes the Manstein method:

> The cited Manstein white paper teaches temporary hair removal by means of a partial destruction of hair follicles, particularly the bulb.  The patentee, in contrast, contemplates a method where the hair shaft is targeted for ablation or severing (cutting) and the follicle is undamaged.  One of ordinary skill in the art following the teachings of the cited Manstein white paper to effectuate temporary hair removal would use pulsed light parameters causing a partial destruction of the hair follicle and preferably no damage to the hair shaft.

(Id. at 11.)  Distinguishing the Jay invention from another prior art reference, the submission proffers that "Eckhouse *does not describe severing or damaging the hair fibers* below the skin surface.  Eckhouse talks only of killing the follicles and removing the hair."  (Id. at 21 (italics original).)

In the October 2008 submission, Jay proffered four new claims that were ultimately determined to be patentable, two of which (claims 33 and 34) specifically state that they operate "without partially or completely destroying follicles associated with the hair fibers."  (Id. at 24; see also Atton Decl. Ex. 15, Ex Parte Reexamination Certificate).  Neither of those

claims is asserted in this proceeding.  The other two claims (35 and 36), one of which is asserted here, specifically claim a method involving light "including one or more wavelengths absorbable by hair fibers" but do not disclaim any effect on follicles associated with the hair fibers.  (Atton Decl., Ex. 15, Ex Parte Reexamination Certificate.)

Construction of all of Jay's claims to include a disclaimer of any impact on follicles is clearly unwarranted by the cited prosecution history.  Indeed, such a construction would be facially inconsistent with Jay's proposal, and the examiner's approval, of patent claims that include a disclaimer of follicle destruction, and patent claims that do not, at the same time. To the extent the passages on which Spectrum relies refer to leaving follicles "alone," "intact," or "undamaged," injuring the hair shaft "alone" or targeting hair fibers "only," they can reasonably be read as consistent with the targeting of, and principal operation of, the Jay method on hair rather than follicles, but not excluding any possibility of collateral or incidental damage to surrounding structures of the follicle when the light is directed to the hair.  Other cited references focus on the hair fiber-oriented nature of the Jay method and do not speak of its interaction with follicles at all.

The Court construes DCTs 10, 24 and 30 as follows:

| DCT No. | Text | Location(s) in Asserted Patent Claims | Construction, if Any |
|---|---|---|---|
| 10 | "Absorption of Light … Resulting (in)" ("Temporary Removal of Hair From" or "Temporary Retardation of Hair Growth Along") a Skin Surface" | '316 Patent – claims 25 and 29. | "Retention of impinging light directed to hair fibers, resulting in (elimination of hair from or reduction in the rate of hair growth along) a skin surface for a limited period of time" |

| DCT No. | Text | Location(s) in Asserted Patent Claims | Construction, if Any |
|---|---|---|---|
| 24 | "By Virtue of an Absorption of the Light of said Pulses by said Endogenous Chromophores in the Hair of said Skin Surface, effectuating Removal of Projecting Hair Fibers from Skin Surface" | '316 Patent – claim 1. | Ordinary meaning |
| 30 | "Sever or Destroy Hair Fibers Below a Skin Surface." | '316 Patent – claim 39; '617 Patent – claims 35 and 36. | Ordinary meaning |

The Non-Stop Dispute - DCTs 26 and 29

       Spectrum turns again to prosecution history excerpts in advocating for a narrowing beyond the plain language of claim terms relating to the effect of treatment with the Jay method. DCTs 26 and 29 speak of "retarding," "slowing," or "delaying" hair growth. Spectrum seeks a construction of these terms that excludes the possibility that any given hair fiber will cease growing even temporarily after treatment with the Jay method. The "summary of the invention" portion of the '617 Patent includes a statement that, "[i]n contrast to prior methods, which are aimed at completely destroying the hair follicle and terminating hair growth, the present method contemplates . . . . [that] the hair will grow and again appear on the treated surface in the absence of additional controlled light application. However, the rate at which hair grows will be reduced by virtue of the application of electromagnetic radiation pursuant to the present invention." ('617 Patent 2:46-55, Atton Decl. Ex. 15.)

       Spectrum also cites statements in the application for the '617 Patent, relating to a claim that does not appear to be asserted in this litigation, as follows:

> Claim 41 contemplates the slowing of hair growth by repeated applications of light energy.  Neither Almeida nor Anderson evinces any interest in slowing hair growth.  Their primary interest is permanent hair removal.  Slowing growth while permitting hair to continue growing is thus contrary to their main goal.  To the extent that Almeida or Anderson discloses temporary hair removal, there is no suggestion of retarding the growth of hair along the skin surface, while permitting the hair to continue growing.

(Atton Decl. Ex. 24 at 28.)  Spectrum also relies upon two other statements in the '617 Patent prosecution history that distinguish the Jay invention from prior art permanent hair removal methods on the basis of retardation, rather than cessation of hair growth, or assert that the Jay method permits continued hair growth, and a statement in the '316 Patent prosecution history that again distinguishes Almeida on the basis that Almeida ceases or stops hair growth while the Jay method "contemplates hair growth retardation not cessation" as supportive of a restrictive construction of the disputed terms.  (See Atton Decl. Ex. 26 at 18, 20; Ex. 29 at 18.)

Each of the cited statements was made in a passage distinguishing the Jay work from prior art on the basis of the overall purpose and effect of the method – temporary, as opposed to permanent hair removal.  Permanent hair removal by definition seeks to ensure that hair will stop growing and never come back.  A temporary method would fail of its purpose were the hair to fail to come back.  This does not mean, however, that every single hair will necessarily keep growing at some rate at all times.  Indeed, the record of the Markman hearing reflects that individual hairs have growth cycles, going dormant at particular times.  (Tr. 7-8.)  The ordinary dictionary definitions of "retard" and "prevent" are instructive in this connection as well.  When referring to an object, "retard" means "to slow up especially by preventing or hindering advance or accomplishment."  See Merriam-Webster's Collegiate Dictionary (10th ed. 1999).  "Prevent," in this context, means "to deprive of power or hope of acting or succeeding" or "to keep from happening or existing."  See id.  None of the language used in the cited Patent

and prosecution history constitutes an unambiguous disclaimer of a method in which temporary hair removal may involve the cessation of growth of some hairs on a treated skin surface. The Court therefore declines to construe the disputed claim term to include the limitation "while permitting the hair to continue to grow." DCTs 26[3] and 29 are therefore to be construed as follows.

| DCT No. | Text | Location(s) in Asserted Patent Claims | Construction, if Any |
|---------|------|---------------------------------------|----------------------|
| 26 | ("Retard" or "Slow" or "Diminish Rate of" or "diminution" of) ("Hair Growth" or "Growth of Hair" or "Growth Rate of Hair") | '316 Patent – claims 1, 29, and 30; '617 Patent – claims 1 and 35; '330 Patent – Claim 7 | Ordinary meaning |
| 29 | "Delay Appearance of Hair on a Skin Surface" | '617 Patent – claim 1. | Cause appearance of hair on a skin surface to occur later than it otherwise would |

Treatment Definition Dispute - DCTs 7, 8, 14, 18, and 25

Each of these disputed claim terms involves the reappearance of hair following an effective application of the Jay method on the hair. The Court had proposed constructions incorporating the phrase "previously treated hair" as a reference to the antecedent application of the treatment method, but the parties disputed the particulars of the requisite effects on any given hair of such treatment prior to reappearance. Having considered the parties' supplemental submissions on this issue, the Court adopts constructions that include the term "previously

---

[3]     The construction of DCT 26 is without prejudice to the parties' positions with respect to Spectrum's pending motion for partial summary judgment, in which Spectrum asserts that two of the underlying patent claims are unenforceable due to an error in the published language of the independent claim.  (See DE No. 65.)

treated hair" so as not to make the constructions confusing or unwieldy, but add a further

sentence defining the term "previously treated hair," as follows:

| DCT No. | Text | Location(s) in Asserted Patent Claims | Construction, if Any |
|---|---|---|---|
| 7 | "Prevent Hair Reappearance" | 542 Patent – claim 1; '316 Patent – claims 25, 39, and 42; '308 Patent – claim 1; '330 Patent – claims 1 and 2. | "Prevent visible regrowth of previously treated hair."  As used in the preceding sentence, the term "previously treated hair" means "hair from a follicle from which hair was previously removed, severed, destroyed, damaged, and/or prevented from reappearing, and/or whose growth and/or appearance was previously prevented, retarded, and/or delayed, as stated in the relevant claim(s)." |
| 8 | "Prior to (a visible) Reappearance of Hairs on a Skin Surface" | '542 Patent – claim 1; '316 Patent – claims 1, 25, 39, and 42; '617 Patent – claims 1, 35, and 36; '308 Patent – claim 1; '330 Patent – claim 1. | "Prior to visible regrowth of previously treated hair on a skin surface."  As used in the preceding sentence, the term "previously treated hair" means "hair from a follicle from which hair was previously removed, severed, destroyed, damaged, and/or prevented from reappearing, and/or whose growth and/or appearance was previously prevented, retarded, and/or delayed, as stated in the relevant claim(s)." |

| DCT No. | Text | Location(s) in Asserted Patent Claims | Construction, if Any |
|---|---|---|---|
| 14 | "Temporarily Preventing Hair Reappearance" | '542 Patent – Claim 1;<br>'316 Patent – Claims 9 and 39;<br>'308 Patent – Claim 1;<br>'330 Patent – Claims 1 and 2. | "Preventing visible regrowth of previously treated hair for a limited period of time."  As used in the preceding sentence, the term "previously treated hair" means "hair from a follicle from which hair was previously removed, severed, destroyed, damaged, and/or prevented from reappearing, and/or whose growth and/or appearance was previously prevented, retarded, and/or delayed, as stated in the relevant claim(s)." |
| 18 | "Irradiating the Skin Surface in a First Treatment Session to Prevent Hair Reappearance; and Thereafter and Prior to a Reappearance of Hair Fibers along said Skin Surface Irradiating the Skin Surface in a Second Treatment Session to Prevent Hair Reappearance" | '316 Patent – claim 42. | "Irradiating the skin surface in a first treatment session to prevent reappearance of previously treated hair; and thereafter and prior to a reappearance of hair fibers along said skin surface irradiating the skin surface in a second treatment session to prevent reappearance of previously treated hair."  As used in the preceding sentence, the term "previously treated hair" means "hair from a follicle from which hair was previously removed, severed, destroyed, damaged, and/or prevented from reappearing, and/or whose growth and/or appearance was previously prevented, retarded, and/or delayed, as stated in the relevant claim(s)." |

| DCT No. | Text | Location(s) in Asserted Patent Claims | Construction, if Any |
|---|---|---|---|
| 25 | "Prior to a Visible Reappearance of Hairs on said Skin Surface, again Generating Pulses of Light and Directing the Pulses Towards said Skin Surface" | '542 Patent – claim 1;<br>'617 Patent – claim 1;<br>'316 Patent – claims 1 and 39;<br>'330 Patent – claim 1. | "Prior to a visible reappearance of previously treated hairs on said skin surface, again generating pulses of light and directing the pulses towards said skin surface."  As used in the preceding sentence, the term "previously treated hair" means "hair from a follicle from which hair was previously removed, severed, destroyed, damaged, and/or prevented from reappearing, and/or whose growth and/or appearance was previously prevented, retarded, and/or delayed, as stated in the relevant claim(s)." |

C<span>ONCLUSION</span>

For the foregoing reasons, the Court hereby adopts the above constructions with

respect to DCTs 1 - 30.

This matter remains referred to Judge Freeman for general pretrial management.

The final pre-trial conference is scheduled to be held on **December 18, 2015, at**

**12:00 noon** in Courtroom 12D.

SO ORDERED.

Dated: New York, New York
        May 12, 2015

                                                      /s/ Laura Taylor Swain
                                                    LAURA TAYLOR SWAIN
                                                    United States District Judge