IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARVEY H. JAY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )    C.A. No. 1:13-cv-8137-LTS-DCF |
| SPECTRUM BRANDS HOLDINGS, INC.,<br>SPECTRUM BRANDS, INC., and SHASER,<br>INC., | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**SPECTRUM'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR RECONSIDERATION**

**I.     INTRODUCTION**

The Federal Circuit has been clear:  inequitable conduct claims require more than an inchoate set of facts supplemented by a hunch.  Yet that is what this Court concluded was sufficient to raise such a claim in its Order denying Spectrum the opportunity to amend, and Jay has provided no substantive basis for the denial of Spectrum's requested amendment.  In order to plead inequitable conduct and not violate Rule 11, a party must have sufficient facts to support the contention that "a specific individual (1) knew of the withheld material information or of the falsity of the material representation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009).   Jay does not genuinely dispute that Spectrum did not have "the specific who, what, when, where, and how of the material misrepresentation or omission committed

1

before the PTO." *Id*.  Indeed, nowhere in Jay's response does he even address the uniqueness of the quantum of proofs to plead an inequitable conduct claim under Federal Circuit precedent.

This Court's Order places defendants such as Spectrum in an untenable catch under the law of the Federal Circuit:  either violate Rule 11 by raising an inequitable conduct claim before facts supporting such a claim have been adduced, or forego a full and fair defense of the action. This is certainly not what the Supreme Court envisioned when it concluded "that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Forman v. Davis*, 371 U.S. 178, 182 (1962).  In any event, and apart from the legal dilemma created by the Court's Order, additional facts provide the sort of color to Jay's fraud on the PTO that should compel the Court to find "good cause" to allow Spectrum to add a claim for inequitable conduct notwithstanding Jay's effort to minimize the import of those facts.  *Schoolcraft v. City of New York*, 298 F.R.D. 134, 136 (S.D.N.Y. 2014) (granting reconsideration where a party "provided additional explanation regarding facts.")  The Court should reconsider its Order, and permit Spectrum's amendment.

**II.    ARGUMENT**

"[A] court may grant reconsideration where the party moving for reconsideration demonstrates an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Schoolcraft*, 298 F.R.D. at 136 (internal quotations omitted).  Spectrum's motion should be granted for at least two reasons. First, reconsideration would correct a clear error in the Court's interpretation of Federal Circuit precedent and prevent a manifest injustice of denying Spectrum a full and fair defense.  Second,

ActiveUS 150358457v.1

the Uradnik and Sudol depositions provide new evidence which adds "color" to the facts in this case.

**Clear Error and Manifest Injustice.**  The Federal Circuit has plainly articulated that, among other proofs, a party pleading inequitable conduct must have basis to allege "**a specific intent to deceive the PTO**." *Exergen*, 575 F.3d at 1328 (emphasis added).  That is because, in the Federal Circuit's view, Rule 11 sanctions are inadequate to remedy "assertions of inequitable conduct that lack factual and legal support." *Therasense*, 649 F.3d 1276, 1296 (Fed. Cir. 2011).  Nowhere does Jay identify that basis prior to the depositions of Jay and his prosecution counsel, and nowhere in the Court's Order does the Court identify that basis.  And that is because, prior to deposing Jay, there were no facts in the record to support an inequitable conduct claim (Dkt. No. 132).

Instead, Jay focuses on the "good cause" standard for amending a scheduling order under Rule 16.  *See* Dkt. No. 134 at 1-3.  There can be little dispute that due process and the right to conduct a full and fair defense is "good cause" satisfying the Rule 16 standard.  *See Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*, 255 F.R.D. 340, 347 (W.D.N.Y. 2009)  "Good cause" to amend a scheduling order exists where a party moves to amend its answer to include inequitable conduct allegations promptly after learning additional facts during discovery.  *Id*. (finding good cause to amend answer where party moved to amend "over two years after the expiration of the [scheduling order's] deadline . . . approximately four months after it first learned of the existence of the August 2007 petition and within approximately one month after it conducted discovery concerning the circumstances of the petition.").  Spectrum appreciates the import of a scheduling order, but also values its obligation to defend itself in this matter within

3

the confines of Rule 11.  Before seeking leave, Spectrum could not have pleaded an inequitable conduct claim under the standard for such claims set forth by the Federal Circuit without violating Rule 11.  Denying Spectrum an amendment would constitute an error and cause manifest injustice.  The Court should reconsider its Order.

*New Evidence.*  Leave to amend is further warranted by deposition testimony uncovered *after* Spectrum's motion for leave was filed in July 2015 that provides color to Jay's intentional and material misrepresentations to the PTO.  This new evidence indeed provides an additional basis for the Court to reconsider its Order denying leave to amend.  *See Schoolcraft*, 298 F.R.D. at 136. (reconsideration is appropriate where new evidence provides "additional color" to previously overlooked facts).

Mr. Uradnik and Mr. Sudol prosecuted Jay's patents, and testified under oath that: (1) Jay never told them about any prior art, including the prior art articles at issue (that contradict what Jay represented to the PTO); and (2) they regarded these articles as material and would have disclosed them to the PTO had Jay provided the prior art articles to them.  (Dkt No. 132 (Stoner Decl., Ex. C at 73-75, 84-86 (Uradnik Dep.); Stoner Decl., Ex. D at 72-77, 82-85 (Sudol Dep.))).  Mr. Uradnik testified:

> Q: Have you ever discussed this [January 22, 1999 article titled "A Guide to Laser or Pulsed-Light Hair Removal by Harvey H. Jay] generally with Dr. Jay?
> A: No.
> Q: Do you believe this document is material to patentability of Dr. Jay's patents?
>    . . . .
> A: Yes. (Uradnik Dep. at 75:4-11)
>    . . . .
> Q: And have you discussed this [May 7, 1999 article titled Epilight Pulsed Hair Removal: A Clinical Study, Comparative Analysis And Literature Review] with Dr. Jay?
> A: No.  (Uradnik Dep. at 84:24-85:1)

4

    . . . .
Q:     And Dr. Jay never gave you this document?
A:     That's correct. (Uradnik Dep. at 85:19-21).

    . . . .
Q:     Do you believe that this document was material to patentability?
A:     Yes. (Uradnik Dep. at 86:15-17).

And Mr. Sudol testified:

Q:     Did Dr. Jay ever give you any articles that he had written?
A:     I don't recall that he did. It surprises me – I learned somewhere along the road from my first subpoena to where we are now that there was some talk about a reference that he had written and that was on his website and I thought – I didn't recollect there being anything that he had written and I certainly didn't recollect anything on his website. In fact, it sort of surprised me to think that he posted a prior art article. He posted an article on his website. I thought this is just business, so this is just a website for, you know, getting people to come in that a scholar wouldn't have, you know, an article on his website." (Sudol Dep. at 73:22-74:16).

    . . . .
Q:     And have you seen this [January 22, 1999 article titled "A Guide to Laser or Pulsed-Light Hair Removal by Harvey H. Jay] before?
A:     I don't recall that I've seen this document before. (Sudol Dep. at 75:24-76:3)

    . . . .
Q:     Is this (Dr. Jay's May 7, 1999 article titled Epilight Pulsed Hair Removal: A Clinical Study, Comparative Analysis And Literature Review), the document you were thinking of earlier when you talked about a more journal type document?

    . . . .
A:     I wouldn't say I was thinking of this article because . . . I don't recognize this article . . . . Yes, I haven't seen this article before and I'm certain of it because the word "Epilight," I never heard that before, that surprises me. (Sudol Dep. at 82:21-83:16)

Jay attempts to minimize the testimony of two officers of the court by declaring it cumulative. *See* Dkt. 134 at 4-5. Not so. This sworn testimony by both of Jay's two attorneys directly contradicts Jay's effort to excuse his concealment of prior art. It lends substantive credibility to Spectrum's contention – for which the Court has heretofore refused to provide leave – that Jay specifically intended to deceive the PTO. Jay blamed the failure to disclose prior

5

ActiveUS 150358457v.1

art on his attorneys: "I disclosed every one of my articles and everything that I had done relevant to hair removal to my attorney, and my attorney made the decision, the legal decision, as to what was relevant for the disclosure to the U.S. Patent Office in regard to my patent." (Dkt. No. 132 (Stoner Decl. Ex. A at 60:2-61:2)). This new evidence shows that Jay's excuse was false and that his patents were obtained by fraud: not only did Jay deliberately withhold material information from the PTO, he also misrepresented the reason for his concealment, falsely blaming it on others.

Spectrum did not have this or other evidence of deceptive intent sufficient to seek amendment under Rule 11 in September 2014. Only after obtaining deposition testimony proving a specific intent to deceive did Spectrum have sufficient basis to allege specific intent in accordance with the Federal Circuit's pleading standards for inequitable conduct claims. Failing to allow Spectrum to amend its pleadings now to allege inequitable conduct despite the recent evidence of Jay's dishonesty would be manifestly unjust and obstruct the truth of the case being decided on the merits. *See Schoolcraft*, 298 F.R.D. at 136.

### III. CONCLUSION

For the foregoing reasons, and the reasons provided in Spectrum's opening motion (Dkt. No. 132), Spectrum respectfully requests that the Court grant its motion for reconsideration, and that the Court permit Spectrum to amend its counterclaims as set forth in the Gilmore Declaration in Support of Spectrum's Motion for Leave to Amend (Dkt. No. 98, Ex. A).

January 4, 2016

                                                          WILMER CUTLER PICKERING
                                                          HALE AND DORR LLP

ActiveUS 150358457v.1

                */s/ Erin Greenfield Mehta*

Wayne L. Stoner
Shira C. Hoffman
60 State Street
Boston, MA 02109
(617) 526-6000 (t)
(617) 526-5000 (f)
wayne.stoner@wilmerhale.com
shira.hoffman@wilmerhale.com

Erin Greenfield Mehta
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 295-6380 (t)
(212) 230-8888 (f)
350 S. Grand Ave., Suite 2100
Los Angeles, CA 90071
(213) 443-5300 (t)
(213) 443-5400 (f)
erin.mehta@wilmerhale.com

*Attorneys for Defendants and Counterclaim-Plaintiffs*